```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                    :
GMA ACCESSORIES, INC.,                              :
                                                    :
                        Plaintiff,                  :
                                                    :       20 Civ. 11126 (JPC)
            -v-                                     :
                                                    :            ORDER
HMY JEWELRY, INC.,                                  :
                                                    :
                        Defendant.                  :
                                                    :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

On April 15, 2021, Plaintiff GMA Accessories, Inc. ("GMA") filed a letter asserting that Defendant HMY Jewelry, Inc. ("HMY") had improperly withheld communications between HMY and two of its customers (the "Customers") on the basis of privilege. Dkt. 44. The following day, HMY responded that these communications were protected under the common interest doctrine. Dkt. 46 at 2. Then, on April 20, 2021, the Court held a conference to discuss this, as well as various other discovery disputes raised by the parties. *See* Dkts. 39, 40, 41, 44, 46. At the direction of the Court, HMY and GMA submitted letters in further support of their positions on April 27, 2021, Dkt. 48, and April 29, 2021, Dkt. 49, respectively, and HMY provided the communications at issue and HMY's indemnification agreements with the Customers, upon which HMY relied to support its argument, for *in camera* review, *see* Dkt. 50. Having reviewed those documents, the Court agrees with HMY, and concludes that the communications are protected by the common interest doctrine.

The attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)

(citing *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). The common interest doctrine is not an independent ground for privilege, but rather "an extension of the attorney[-]client privilege." *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989) (citations and internal quotation marks omitted). "It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.* at 244. In other words, the common interest doctrine allows for the communication of privileged information to a third party without it constituting a waiver of privilege, so long as the third party and the client "share a common legal interest" and the parties cooperate in developing a common legal strategy. *In re Rivastigmine Pat. Litig.*, No. 05 Md. 1661 (HB) (JCF), 2005 WL 2319005, at *2 (S.D.N.Y. Sept. 22, 2005), *aff'd*, 2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005). Litigation need not actually be in progress for the rule to apply, so long as the interests are of "sufficient legal character." *Schaeffler v. United States*, 806 F.3d 34, 40-41 (2d Cir. 2015). "Although some courts in this circuit have articulated a requirement that the common interest be 'identical' and not merely 'similar,'" other courts have questioned this, and "have simply focused on whether the parties had interests in common without exploring whether they were identical." *Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc.*, No. 07 Civ. 1675 (ERK) (VVP), 2009 WL 3786210, at *2 (E.D.N.Y. Nov. 12, 2009).

"The burden of establishing the attorney-client privilege, in all its elements, always rests upon the person asserting it." *Schwimmer*, 892 F.2d at 244. "As in all claims of privilege arising out of the attorney-client relationship, a claim resting on the common interest rule requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *Id.*; *see United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) ("Ultimately, '[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.'" (quoting *United States v. Kovel*, 296 F.2d

2

918, 922 (2d Cir. 1961) (Friendly, J.))). And this privilege generally protects attorney work product, "unless the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Am. Eagle Outfitters, Inc.*, 2009 WL 3786210, at *2 (quoting *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 641 (E.D.N.Y. 1997)).

First, HMY has demonstrated that the communications at issue are privileged. As HMY explained, these communications, which were primarily between the Customers' in-house counsel and HMY, were made for the purpose of formulating the parties' legal strategy. *See* Dkt. 46 at 2 (noting that in response to the demand letters, "counsel for the retailers and HMY discussed how to respond to the demand letters and what actions, if any, could or should be undertaken in response"). In addition, HMY and the Customers represented in their *in camera* submissions that these communications were made in confidence, with the expectation that they would not be disclosed.

Second, HMY has made the requisite showing that the communications are protected by the common interest rule. HMY and the Customers shared a common legal interest: the legal risk of infringement. *See GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) ("[I]t is well settled that a retailer's direct sale of an infringing product is sufficient to create liability."), *aff'd sub nom. GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 558 F. App'x 116 (2d Cir. 2014). In fact, the communications here were made in direct response to GMA's demand letters, which threatened litigation against all entities. *See* Dkt. 32, Exh. 1; Dkt. 46, Exh. 2. HMY has also demonstrated that it and the Customers agreed to engage in a joint legal strategy regarding their response to GMA's demand letters. This finding is not only based on the nature of the communications, but also the existence of two agreements in which HMY agreed to indemnify both Customers at issue here. Although a written agreement is not required to show an agreement to engage in a joint legal strategy, courts generally find indemnification agreements to be "strong

proof" of actual cooperation. *Am. Eagle Outfitters, Inc.*, 2009 WL 3786210, at *2; *accord Ferring B.V. v. Fera Pharms., LLC*, No. 13 Civ. 4640 (SJF) (AKT), 2016 WL 5390876, at *4 (E.D.N.Y. Sept. 27, 2016) ("The [c]ourt further notes that, in light of the indemnification provisions of the [parties' agreement], [d]efendants' communications with each other regarding claims in this litigation would fall under the joint defense privilege."); *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16 Civ. 6392 (JPO), 2019 WL 2121690, at *4 (S.D.N.Y. May 15, 2019) (concluding that Peloton and the designer of exercise equipment shared a common legal interest in part because the designer had agreed to indemnify Peloton, but concluding that the communications were not protected because they were made in the course of discussing the speaker's "hopes and dreams," not preparing a legal strategy). These agreements reflect that HMY had agreed to indemnify the Customers against potential legal claims, such as the one at issue here.

In sum, HMY and the Customers shared a common legal interest, crystalized by GMA's own demand letter, and sought to form a joint legal strategy. HMY's communications with the Customers were made in pursuit of that strategy. Accordingly, because the common legal interest rule applies, the Court declines GMA's request for the Court to compel disclosure of these communications.

SO ORDERED.

Dated: May 11, 2021
New York, New York

JOHN P. CRONAN
United States District Judge

4